# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# CIVIL NO. 5:10CV008-DSC

| | |
|---|---|
| AMY L. TRIVETTE,<br>    Plaintiff,<br><br>    vs.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social<br>Security Administration,<br>    Defendant. | **MEMORANDUM AND ORDER** |

**THIS MATTER** is before the Court on Plaintiff's "Motion for Summary Judgment" (document #14) and "Memorandum in Support ... " (document #15), both filed July 12, 2010; and Defendant's "Motion for Summary Judgment" (document #18) and "Memorandum in Support ... " (document #19), both filed September 23, 2010. The parties have consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c) and these Motions are now ripe for disposition.

Having considered the written arguments, administrative record, and applicable authority, the Court finds that Defendant's decision to deny Plaintiff Social Security disability benefits is supported by substantial evidence. Accordingly, the Court will deny Plaintiff's Motion for Summary Judgment; grant Defendant's Motion for Summary Judgment; and affirm the Commissioner's decision.

## I. PROCEDURAL HISTORY

On January 24, 2007, Plaintiff filed applications for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI"), alleging she was unable to work since January 15, 2006. (Tr. 153-155, 156-159, 176). Plaintiff's claim was denied initially

and upon reconsideration.

Plaintiff filed a timely Request for Hearing, and on July 15, 2009 a hearing was held before an Administrative Law Judge ("ALJ"). In a decision dated August 21, 2009, the ALJ denied Plaintiff's claim. The ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date; that Plaintiff suffered from anxiety disorder, dysthymic disorder, panic disorder, and obsessive- compulsive disorder, which were severe impairments within the meaning of the regulations, but did not meet or equal any listing in 20 C.F.R. Pt. 404, Subpt. P, App. 1; and that Plaintiff retained the Residual Functional Capacity ("RFC")[1] to perform work at all exertional levels that involved no more than routine and repetitive tasks and no public contact or production pace.
Finally, the ALJ found that considering Plaintiff's RFC together with her age, education and past work experience, she could perform her past relevant work as an order picker and packer, as well as other work that existed in significant numbers in the national economy and therefore she was not disabled. (Tr. 17).

On August 31, 2009, Plaintiff filed her Request for Review and, in doing so, requested "a transcript or duplicate recording from the [July 15, 2009 administrative] hearing and a further opportunity thereafter to submit comment in support of [her] appeal" to the Appeals Council. (Tr. 746); Plaintiff's "Memorandum in Support ... " at 5-6 (document #15).

On December 2, 2009, the Appeals Council denied Plaintiff's Request for Review without

---

[1] The Social Security Regulations define "Residual Functional Capacity" as "what [a claimant] can still do despite his limitations." 20 C.F.R. § 404.1545(a). The Commissioner is required to "first assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] residual functional capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b).

2

responding to Plaintiff's request for a transcript or recording of the hearing.  As Defendant points out in his brief, a copy of the transcript is part of the record now before the Court.

Plaintiff filed the present action on February 1, 2010.  On appeal, Plaintiff assigns error to the Appeals Council's denial of her Request for Review without first providing her a transcript or recording of the hearing.  Plaintiff also assigns error to the ALJ's determinations concerning the severity of her impairments, her credibility, and the medical opinions of Agency experts. Finally, Plaintiff assigns error to the ALJ's ultimate determination that she was not disabled because she could perform her past relevant work.  Plaintiff's "Memorandum in Support ... " at 5-24 (document #15).

The parties' cross-Motions for Summary Judgment are ripe for disposition.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards.  Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990);  see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam).  The District Court does not review a final decision of the Commissioner de novo.  Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  In Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986), quoting Richardson v. Perales, 402 U.S. 389, 401

(1971), the Fourth Circuit defined "substantial evidence" thus:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

See also Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays v. Sullivan, 907 F.2d at 1456 (4th Cir. 1990); see also Smith v. Schweiker, 795 F.2d at 345; and Blalock v. Richardson, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome – so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION OF CLAIM

Concerning Plaintiff's first assignment of error, Defendant's regulations provide that when filing a Request for Review, a claimant may request a transcript of the administrative hearing that was held before the ALJ. 20 C.F.R. § 404.974 ("You may request or receive copies or a statement of the documents or other written evidence upon which the hearing decision or dismissal was based and a copy or summary of the transcript of oral evidence.") If the Appeals Council denies the request for review, the ALJ's decision becomes the final decision of the Commissioner, and it is the ALJ's decision - not the decision of the Appeals Council - that is subject to judicial review. 20 C.F.R. § 404.981; Matthews v. Apfel, 239 F.3d 589, 594 (3rd Cir. 2001) ("No statutory authority

4

(the source of the district court's review) authorizes the court to review the Appeals Council decision to deny review"); Harris v. Commissioner of Social Sec., No. 1:08-cv-384, 2009 WL 6364253, at *9-*10 (W.D. Mich. Sep. 2, 2009) (plaintiff's argument that Appeals Council erred by failing to send her records and transcripts after she requested them, pursuant to 20 C.F.R. § 404.974, and thus prevented her from perfecting her appeal of ALJ's decision was "patently meritless," as court's "review is defined by statute, and does not encompass the Appeals Council's discretionary decision whether to grant review;" thus, whether plaintiff fully perfected contentions to Appeals Council was not relevant to court's review).

Because the matter before the Court is a review of the ALJ's decision, rather than the Appeals Council's decision to deny review, and because a copy of the transcript of the hearing was made available to Plaintiff in a timely fashion during this appeal, the Court will overrule this assignment of error.

The question before the ALJ was whether at any time Plaintiff became "disabled" as that term is defined for Social Security purposes.[2] Plaintiff argues that the ALJ failed to properly assess the severity of her impairments. Plaintiff's "Memorandum in Support ... " at 9, 10, 13, 15, 16, 19-23 (document #15). Specifically, Plaintiff claims that the ALJ failed to detail the work-related limitations caused by the conditions he found to be severe and failed to find that her urinary incontinence and migraine headaches were severe impairments.

An impairment is severe if the medical evidence establishes that it significantly limits the

---

[2]Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an:

>   inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .

Pass v. Chater, 65 F. 3d 1200, 1203 (4th Cir. 1995).

5

claimant's ability to perform basic work activities.[3]  20 C.F.R. §§ 404.1520(c), 416.920(c). See also Social Security Ruling 85-28 ("[M]edical evidence alone is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities.") As to any alleged mental impairment, the ALJ has a duty to document the evaluation of the severity of that alleged impairment by using the procedure described in 20 C.F.R. §§ 404.1520a, 416.920a.  See also Social Security Ruling 96-8p.  In particular, the  ALJ is to make findings concerning four criteria: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).

As previously discussed, the ALJ found that Plaintiff suffered from severe impairments including anxiety disorder, dysthymic disorder, panic disorder, and obsessive-compulsive disorder. Plaintiff first argues that the ALJ failed to make specific findings as to the work-related limitations caused by each of those severe impairments.  Although the ALJ's mental RFC assessment limited her to performing no more than routine and repetitive tasks with no public contact or production pace, Plaintiff claims this assessment was deficient because the ALJ failed to specify which of the severe impairments caused these limitations.

To the contrary,  when assessing a claimant's RFC, the ALJ is not required to state which severe impairment caused a specific work-related limitation.  Rather, an ALJ's RFC assessment must be an evaluation of the "total limiting effects" of a claimant's impairments.  20 C.F.R. §§ 404.1545(e), 416.945(e) (ALJ "will consider the limiting effects of [the claimant's] impairment(s), even those that are not severe, in determining [a claimant's] residual functional capacity."). The ALJ

---

[3]  Basic work activities include walking; standing; sitting; lifting; pushing; pulling; reaching; carrying; handling; seeing; hearing; speaking;  understanding, carrying out, and remembering simple instructions; using judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting.  20 C.F.R. §§ 404.1521(b), 416.921(b).

has a duty to consider the "combined effect" of a claimant's impairments throughout the sequential evaluation process. 20 C.F.R. §§ 404.1523, 416.923. Thus, the ALJ did not err by failing to state which of Plaintiff's severe impairments caused the limitations set forth in the mental RFC assessment. See Dowdy v. Barnhart, Civil Action No. 1:04cv1056, 2005 WL 3841868, at *4 (M.D. Ala. Jan. 4, 2005) (citing 20 C.F.R. §§ 404.1545(e), 416.945(e) and finding that "ALJ is not required to specifically assign functional limitations to each impairment and address them individually . . . .").

Moreover, substantial evidence supports the ALJ's finding that even with the combined effect of her anxiety disorder, dysthymic disorder, panic disorder, and obsessive-compulsive disorder, Plaintiff still could perform routine and repetitive tasks with no public contact or production pace. Dr. W.W. Albertson, a Disability Determination Services ("DDS") psychologist, considered those impairments (Tr. 448) and opined that Plaintiff was able to perform simple, routine repetitive tasks in a low stress, low production environment with minimal public contacts (Tr. 447). That opinion is nearly identical to the ALJ's finding that Plaintiff retained the mental RFC to perform routine and repetitive tasks with no public contact or production pace. Similarly, Michelle A. Coates, M.A., performed a consultative evaluation of Plaintiff and diagnosed her with an anxiety disorder, dysthymic disorder, panic disorder, and obsessive-compulsive disorder (Tr. 439-44). Ms. Coates opined that those impairments allowed Plaintiff to satisfactorily complete work-related tasks; tolerate work stressors; adjust to a work environment and schedule; exhibit appropriate work-place behavior; and relate well to others (Tr. 443). Ms. Coates' opinion was much less restrictive than the ALJ's RFC assessment and therefore supported the ALJ's conclusion. Frost v. Barnhart, 03-215-P-H, 2004 WL 1529286, at *5 (D. Me. May 7, 2004) (ALJ's RFC assessment for light work was supported by DDS physicians' opinions that claimant could perform light, "if not

heavier" work).

To support her argument that her urinary incontinence and headaches were severe, Plaintiff relies upon her diagnoses of dysuria and headaches; a prescription she received to treat urinary incontinence; and her subjective complaints of limitations resulting from those conditions.

As previously discussed, for an impairment to be severe the medical evidence must establish that the impairment significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). Here, Plaintiff does not identify, and the record does not contain, any medical evidence establishing that Plaintiff's urinary incontinence and headaches impacted her ability to perform basic work activities. The mere fact that Plaintiff was diagnosed with dysuria and headaches, or prescribed medications to treat those impairments, is not enough to establish that they were severe. Betts v. Barnhart, No. 02-4027-JAR, 2004 WL 1078141, at *4 (D. Kan. May 7, 2004) (in finding that ALJ properly determined mental impairment to be non-severe, the court reasoned that, "[a]lthough plaintiff produced medical evidence that her doctors discussed with her, and prescribed medication for, her depression and panic attacks, she produced no medical evidence that this affected her basic work abilities.") As noted by the ALJ, Plaintiff's headaches were controlled by medication. (Tr. 13.) This supports a finding that the impairment was not severe. Johnston v. Apfel, 210 F.3d 870, 874 (8th Cir. 2000) (alleged impairment not severe when stabilized by treatment and unsupported by medical record).

Under the applicable regulations, where the medical evidence does not establish severity, a plaintiff's subjective complaints alone are not sufficient. Social Security Ruling 85-28; Suddeth v. Astrue, No. CV-08-0148-CI, 2009 WL 1394237, at *5 (E.D. Wash. May 19, 2009) ("credible medical evidence is evaluated at step two to assess the effects of an impairment; subjective complaints alone cannot establish severity.")

8

The ALJ properly applied the standard for determining a claimant's Residual Functioning Capacity based on subjective complaints of pain and, in this case, the record contains substantial evidence to support the ALJ's conclusion that Plaintiff's testimony was <u>not</u> fully credible.

The determination of whether a person is disabled by nonexertional pain or other symptoms is a two-step process. "First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." <u>Craig v. Chater</u>, 76 F.3d 585, 594 (4th Cir. 1996), <u>citing</u> 20 C.F.R. § 416.929(b); <u>and</u> § 404.1529(b); 42 U.S.C. § 423(d)(5)(A). If there is such evidence, then the ALJ must evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects [his] ability to work." <u>Id.</u> at 595, <u>citing</u> 20 C.F.R. § 416.929(c)(1); <u>and</u> § 404.1529(c)(1). The regulations provide that this evaluation must take into account:

> not only the claimant's statements about his or her pain, but also "all the available evidence," including the claimant's medical history, medical signs, and laboratory findings; any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.); and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it.

<u>Craig</u>, 76 F.3d at 595 (citations omitted).

The record contains evidence of Plaintiff's anxiety disorder, dysthymic disorder, panic disorder, and obsessive-compulsive disorder – which <u>could</u> be expected to produce some of the pain claimed by Plaintiff – and thus the ALJ essentially found that Plaintiff could satisfy the first prong of the test articulated in <u>Craig</u>. However, the ALJ also correctly evaluated the "intensity and persistence of [her] pain, and the extent to which it affects [her] ability to work," and found Plaintiff's subjective description of her limitations not to be credible.

9

The ALJ first focused on the consistency of Plaintiff's complaints of disabling pain with the evidence of record. This is permissible as Plaintiff's allegations of pain "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers." Mickles v. Shalala, 29 F.3d 918, 927 (4th Cir. 1994) Moreover, "[o]ne strong indication of credibility of an individual's statements is their consistency, both internally and with other information in the case record." Social Security Ruling 96-7p, available at 1996 WL 374186, at *5 (S.S.A.).

When assessing a claimant's credibility, the ALJ is required to consider, pursuant to Social Security Ruling 96-7p, (1) the claimant's medical signs and laboratory findings; (2) the diagnoses, prognoses, and medical opinions provided by the claimant's medical sources; and (3) statements regarding the claimant's medical history, treatment and response, prior work record, efforts to work, and daily activities. In addition, Social Security Ruling 96-7p requires that the ALJ provide specific reasons to support the credibility finding.

Plaintiff testified that her mental impairments completely prevented her from working. Plaintiff also testified that she could only work successfully when she had a family member working with her. She stated that she was terminated from her job as a hospital cook because she was absent due to anxiety, and left her job as a cafeteria worker because she suffered from anxiety and panic attacks.

The ALJ discounted Plaintiff's testimony that she worked alongside family members in her former jobs, since her job history reports fails to establish that any family members followed her from job to job. (Tr. 16, 181.) As to Plaintiff's subjective complaints that she could not work due to anxiety and panic attacks, the ALJ found that the complaints were not credible since Plaintiff

10

testified that she left her most recent job due to unhappiness with her work schedule. (Tr. 16, 27-28.) Similarly, the ALJ found that Plaintiff collected unemployment benefits after leaving that job, which suggested that she believed she was capable of working. (Tr. 16, 27-28.)

"The only fair manner to weigh a subjective complaint of pain is to examine how the pain affects the routine of life." Mickles, 29 F.3d at 921 (citing Hunter v. Sullivan, 993 F.2d 31 (4th Cir. 1992) (claimant's failure to fill prescription for painkiller, which itself was indicated for only mild pain, and failure to follow medical and physical therapy regimen, supported ALJ's inference that claimant's pain was not as severe as he asserted)). In this case, the record before the ALJ clearly established an inconsistency between Plaintiff's claims of inability to work and her admitted ability to carry on with moderate daily activities. Her testimony was that she had a "very active day." She reported caring for two children, washing dishes, sweeping, doing laundry, mopping, cleaning the house, reading books, listening to the radio, going to church, cooking, and talking to friends on the telephone. (Tr. 15.)

Plaintiff next argues that the ALJ failed to properly assess the medical opinions of three Agency experts. The ALJ is required to consider and weigh any medical opinion contained in the evidence of record, regardless of the source of the opinion. *See* 20 C.F.R. §§ 416.927(d), 404.1527(d).

Dr. Albertson, the DDS psychologist, stated that Plaintiff had moderate, that is, nondisabling, limitations in her ability to understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; complete a normal workday or workweek without interruptions; perform at a consistent pace; interact appropriately with the public; accept instructions and respond appropriately to criticism from supervisors; and respond appropriately to changes in a work setting. (Tr. 445-446.) Dr. Albertson concluded that Plaintiff had a mental RFC to perform

simple, routine, repetitive tasks in a low stress, low production environment with minimal public contacts. (Tr. 447). As discussed above, the ALJ agreed with Dr. Albertson's opinion, finding that Plaintiff retained the mental RFC to perform no more than routine and repetitive tasks with no public contact or production pace (Tr. 14 at Finding 5).

Ms. Coates found that Plaintiff's depression and anxiety were not severe enough to cause significant problems in a work setting, and that she could satisfactorily complete work-related tasks; tolerate work stressors; adjust to a work environment and schedule; exhibit appropriate work-place behavior; and relate well to others. (Tr. 443.) As previously discussed, although the ALJ stated that he found Ms. Coates' opinion to be credible, he determined greater restrictions, which hardly constitutes a basis for remand. MacFarlane v. Astrue, No. 07-132-P-H, 2008 WL 660225, at *4 (D. Me. Mar. 5, 2008) (error is harmless when finding is more favorable to plaintiff than would have been justified by evidence). Although the ALJ found the opinion rendered by Ms. Coates to be credible, he did not give it more weight than Dr. Albertson's opinion.

Finally, Plaintiff calls attention to the opinion rendered by Dr. Joel Dascal, a DDS physician, stating that Plaintiff could lift and carry fifty pounds occasionally and twenty-five pounds frequently (Tr. 464), which was consistent with the demands of medium work. 20 C.F.R. §§ 404.1567(c), 416.967(c). Although the ALJ did not specifically discuss Dr. Dascal's opinion that Plaintiff could lift and carry fifty pounds occasionally and twenty-five pounds frequently, no error resulted since that limitation had no impact on the ALJ's findings in steps four and five. Caldwell v. Barnhart, No. 07-12595, 2008 WL 60289, at *1-*2 (11th Cir. Jan. 7, 2008) (ALJ's failure to explain weight given to opinion addressing claimant's limitations was harmless, as jobs ALJ identified at step five did not require performance of tasks that exceeded those limitations); Morris v. Barnhart, No. 05-1376-MLB, 2006 WL 4045935, at *3-*4 (D. Kan. Nov. 21, 2006) (same). Specifically, Dr.

Dascal opined that Plaintiff could perform the demands of medium work. The Vocational Expert ("V.E.") testified that Plaintiff's past relevant work as an order picker and packer was performed at the medium level of exertion, while other jobs Plaintiff could perform - tobacco sampler, coupon recycler, surveillance system monitor, and weight tester - were either light or sedentary. (Tr. 48-49.)

Finally, when determining whether a claimant can perform her past relevant work, Social Security Ruling 82-62 requires that the ALJ make findings of fact as to (1) the claimant's RFC; (2) the physical and mental demands of the claimant's past relevant work; and (3) whether the claimant's RFC allows her to return to that work. Here, as noted above, the ALJ found that Plaintiff retained the RFC to perform work at all exertional levels that involved no more than routine and repetitive tasks with no public contact or production pace (Tr. 14 at Finding 5). The ALJ then called attention to the fact that the Dictionary of Occupational Titles ("DOT") defined Plaintiff's past relevant work as an order picker and packer as medium and unskilled (Tr. 17). The ALJ then found that after comparing Plaintiff's RFC to the physical and mental demands of Plaintiff's past relevant work, Plaintiff's RFC did not preclude her performing the order picker and packer jobs (Tr. 17). In support of that finding, the ALJ relied upon the V.E.'s testimony from the administrative hearing, stating that an individual with Plaintiff's RFC could perform those jobs (Tr. 17, 46).

The ALJ's findings that Plaintiff's past work was medium and unskilled adequately articulated the requirements of those jobs. Campos v. Astrue, No. CV 08-5648 JC, 2009 WL 2602435, at *6-*7 (C.D. Cal. Aug. 24, 2009) (ALJ discussed mental and physical demands of claimant's past relevant work by finding that one job "was performed at the light exertional level" and another "was performed at the medium exertional level"); Galvin v. Commissioner of Social Sec., Civil Action No. 08-1317, 2009 WL 2177216, at *11-*13 (W.D. Pa. Jul. 22, 2009) (ALJ properly made findings as to physical and mental demands of job claimant performed in past by

13

noting that job was "light, unskilled work"); Bell v. Astrue, No. 08-4016-RDR, 2009 WL 86568, at *10 (D. Kan. Jan. 12, 2009) (claimant's claim that ALJ did not describe physical or mental demands of his past relevant work was incorrect, as ALJ found that claimant's past relevant work constituted "skilled work generally performed at the light exertional level" ) Even assuming arguendo that the ALJ failed to sufficiently define Plaintiff's past relevant work, Plaintiff is not entitled to remand because the ALJ offered a step five alternative finding (Tr. 17) that Plaintiff does not challenge - the existence of other light and sedentary jobs identified by the V.E. Tommasetti v. Astrue, 533 F.3d 1035, 1043 (9th Cir. 2008) ("Although the ALJ's step four determination constitutes error, it is harmless error in light of the ALJ's alternative finding at step five.")

In short, although the medical records establish that Plaintiff experienced pain and mental and emotional difficulties to some extent, as the Fourth Circuit has noted, it is the ALJ's responsibility, not the Court's, "to reconcile inconsistencies in the medical evidence." Seacrist, 538 F.2d at 1056-57.

Simply put, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." Mickles, 29 F.3d at 923 (citing Simmons v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987)). This is precisely such a case, as it contains substantial evidence to support the ALJ's treatment of the medical records, Plaintiff's credibility, and his ultimate determination that Plaintiff was not disabled.

## IV. ORDER

**NOW, THEREFORE, IT IS ORDERED:**

1. Plaintiff's "Motion For Summary Judgment" (document #14) is **DENIED**; Defendant's "Motion for Summary Judgment" (document #18) is **GRANTED**; and the

Commissioner's decision is **AFFIRMED.**

2. The Clerk is directed to send copies of this Memorandum and Order to counsel for the parties.

**SO ORDERED, ADJUDGED AND DECREED.**

Signed: September 28, 2010

David S. Cayer
United States Magistrate Judge